IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

IN THE MATTER OF:

Unit 82 - Freeport Mini Storage,
171103 U.S. Highway 331 South,
Freeport, Florida 32439

Case No.: 3:20mj113-EMT

**AFFIDAVIT IN SUPPORT OF
A SEARCH WARRANT**

**I. INTRODUCTION:**

I, Kevin M. Miller, being first duly sworn, hereby depose and state as follows:

1. I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Special Agent with the Drug Enforcement Administration ("DEA") currently assigned to the Panama City Office. I have been a Special Agent with DEA for approximately eight years. Prior to joining DEA, I was a police officer for the Tallahassee Police Department in Tallahassee, Florida, for approximately 10 years. As a Special Agent and law enforcement officer/investigator, your applicant has participated in hundreds of drug trafficking investigations as both the case agent

and in support roles. Your affiant has received extensive training in the identification, investigation, and apprehension of felony law violators both in Federal and State jurisdictions and has conducted and participated in numerous felony investigations resulting in the arrest and successful conviction of felony offenders.

3. Since this affidavit is being submitted for the limited purpose of supporting the issuance of a search warrant, I have not included each and every fact known to me concerning this investigation.

4. Since May 2019, the Drug Enforcement Administration (DEA) and other law enforcement agencies have been conducting an investigation into a network of drug traffickers who have unlawfully distributed methamphetamine, heroin, cocaine, and prescription pills in Walton County, Florida, and the surrounding area. The investigation thus far has determined that this network of drug traffickers includes James Young (hereinafter, "Young") and Young's partner and girlfriend Shelley Johnson (hereinafter, "Johnson").

5. On or about March 17, 2020, the Honorable Casey Rodgers, United States District Judge for the Northern District of Florida, issued an order authorizing the interception of wire and electronic communications over Target Telephone 1 (850-842-1976), which is being used by Johnson. On or about April 8, 2020, Judge

2

Rogers issued an order authorizing the interception of wire and electronic communications over Target Telephone 2 (404 435-2996), which is being used by Young.

6. From on or about May 13, 2019, to January 15, 2020, law enforcement conducted approximately six controlled purchases of methamphetamine from Johnson and/or Young. All of the transactions were audio and video recorded.

7. On or about May 13, 2019, a confidential source working for the DEA completed a controlled purchase of approximately one ounce of methamphetamine from Johnson in Walton County, Florida. The substance obtained from Johnson field-tested positive for methamphetamine.

8. On or about May 22, 2019, during a controlled buy, an undercover DEA Agent obtained approximately two ounces of suspected methamphetamine from Johnson in exchange for $750. The substance obtained from Johnson field-tested positive for methamphetamine.

9. On or about June 5, 2019, during a controlled buy, an undercover DEA Agent obtained approximately three ounces of suspected methamphetamine from Johnson in exchange for $1200. The substance obtained from Johnson field-tested positive for methamphetamine.

10. On or about September 4, 2019, during a controlled buy, an undercover DEA Agent obtained approximately three ounces of suspected methamphetamine from Johnson in exchange for $1400. The substance obtained from Johnson field-tested positive for methamphetamine.

11. On or about January 15, 2020, during a controlled buy, an undercover DEA Agent obtained approximately two and one half ounces of suspected methamphetamine from Johnson and Young in exchange for $1150. The substance obtained from Johnson and Young field-tested positive for methamphetamine.

12. Based on the wire intercept of Young's phone, your affiant learned that on April 16, 2020, Young communicated with an unidentified female from Atlanta, Georgia, to arrange the delivery of approximately four kilograms of methamphetamine. The wire intercepts indicated that the unidentified female used a courier to deliver the methamphetamine to Young. Law enforcement surveillance, as well as the wire intercepts, confirmed that the courier met with Young and delivered the methamphetamine.

13. On April 30, 2020, during a controlled buy, an undercover DEA Agent obtained approximately nine and one half ounces of suspected methamphetamine from Johnson in exchange for $3800. The substance obtained from Johnson field-tested positive for methamphetamine.

14. On or about May 2, 2020, Young, using Target Telephone 2, called Angelia Ross at telephone number (770) 466-0945 (Call Session 9227). During the conversation, Ross told Young that she is working on "stuff" so if Young comes to Ross' location, she will have "several" for Young. Young then told Ross that he was coming to meet her. Based on this as well as past wire intercepts, and your affiant's training and experience, your affiant believes that Ross was coordinating the procurement of methamphetamine to sell to Young on a trip to meet her in Atlanta, Georgia.

15. Based on a judicially authorized GPS device, your affiant believes that between May 3, 2020, and May 4, 2020, Young was in the area of Atlanta, Georgia, to include the area of Angelia Ross' residence, located at 3455 Lake Carlton Road, Loganville, Georgia.

16. On May 4, 2020, based on the wire intercept, Young exchanged a series of text messages with Alicia Rutledge using telephone number (850) 460-4881. During the text exchange, Young told Rutledge that he was on the road but that he would be back tonight. Your affiant did thereafter acquire federal search warrants for the residences and vehicles of Johnson and Young.

17. On May 5, 2020, GPS location information indicated that Young was traveling out of the Atlanta area and toward Florida. On the morning of May 6,

5

2020, Young was pulled over by law enforcement for exceeding the posted speed limit. Johnson was the only passenger in the vehicle. Within approximately 10 minutes of the initial stop, K-9 Officer Damon Byrd arrived on-scene as a backup unit. While on-scene, Officer Byrd deployed his trained certified narcotics detection K-9 "Jester" to conduct a free air sniff of the outside of the vehicle. K-9 Jester provided a positive alert for the odor of narcotics coming from the vehicle. A subsequent search of the vehicle resulted in the seizure of approximately 1,485 grams of methamphetamine. The substance was field-tested and was positive for methamphetamine. There were also smaller baggies containing an additional amount of suspected methamphetamine inside a trap in the vehicle. The trap had been manufactured by the DEA and previously provided to Young by an undercover DEA agent. Young and Johnson had previously sold methamphetamine to this undercover DEA agent. Law enforcement also seized U.S. currency in excess of $20,000.

18.    Following Young and Johnson's arrest by the Walton County Sheriff's Office, federal search warrants were executed at 680 Mallet Bayou Road, Freeport, Florida (Johnson's residence) and 1390 Sexton Road, DeFuniak Springs, Florida (Young's residence). During the course of the investigation, your affiant confirmed that Young and Johnson lived at these respective addresses.

19. In Young's residence, law enforcement found approximately six ounces of suspected cocaine in a safe located in a bedroom. The suspected cocaine was field-tested and subsequently tested presumptive positive for cocaine. The clothing in this bedroom was consistent with the occupant being a grown man. In this bedroom, law enforcement also recovered an invoice from Freeport Mini Storage, 171103 U.S. Highway 331 South, Freeport, Florida, 32439. The invoice was addressed to James Young at 10 E. Bayou Forest Drive, Freeport, Florida, and dated January 8, 2020. Your affiant knows that this address is listed as Young's home address on his driver's license. However, during the wire intercepts, Young has identified this location as his mother's address. The invoice indicated that Young was the renter of Unit 82. An unidentified classic bolt action rifle was also located in the same bedroom.

20. Law enforcement also recovered a Remington 700 rifle .243 caliber in a locked room within the residence. The key used to unlock the door to this room was originally located on a key ring seized from Young during the earlier traffic stop. A search of NCIC revealed that Young has previously been convicted of a felony.

21. On May 7, 2020, your affiant obtained an administrative subpoena requesting all storage records, rental/lease agreements, and other documents relating

to the renter of Unit 82 located at the Freeport Mini Storage, 171103 U.S. Highway 331 South, Freeport, Florida 32439.

22. On May 7, 2020, via telephone, WCSO Sergeant Steve Key contacted Mark Carley, the owner and manager of Freeport Mini Storage. Sergeant Key subsequently emailed Carley a copy of the administrative subpoena. Carley responded to the subpoena via email, and provided Sergeant Key with customer account information showing that Young was the renter of Unit 82, and had rented Unit 82 since September 29, 2016.

23. On May 7, 2020, WCSO K9 Deputy John Avery deployed a trained/certified narcotics detection K9 to conduct a free air sniff of numerous storage units located at the Freeport Mini Storage. This free air sniff included Unit 82. K9 Colt did not alert or indicate on Unit 82. Nevertheless, your affiant knows, based on his training and experience, that individuals who distribute controlled substances often use storage units and "stash houses" to hide evidence of their unlawful activity, including items such as firearms, currency, scales, and drug paraphernalia. Moreover, I know, based on my training and experience, that the scent of controlled substances can be "masked" using other substances. Drug dealers do this in order to avoid the detection of their controlled substances by trained narcotics K-9s.

24. On May 8, 2020, the Honorable Magistrate Elizabeth M. Timothy authorized a criminal complaint against both James Young and Shelley Johnson, charging each with Conspiracy to Possess with the Intent to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine.

25. Your affiant respectfully submits that there is probable cause to search Unit 82 for evidence of violations of 21 U.S.C. §§ 841 and 846. The items I intend to search for are specifically listed in Attachment A. Pursuant to Fed.R.Crim.P. 41(d)(3), I respectfully request the issuance of a search warrant by telephonic means.

Kevin M. Miller
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 12th day of May, 2020, in Pensacola, Florida, in that the above affiant attested to and submitted the contents of the foregoing written affidavit via reliable electronic means. (telephone)

ELIZABETH M. TIMOTHY
UNITED STATES MAGISTRATE JUDGE

IN THE MATTER OF: **Unit 82 - Freeport Mini Storage, 171103 U.S. Highway 331 South, Freeport, Florida 32439; Case No. 3:20mj113-EMT**

## ATTACHMENT A

The items to be seized are as follows:

a. Methamphetamine, heroin, cocaine, and other controlled substances;

b. Firearms and ammunition;

c. Documents of any kind describing the price, quantity, receipt, purchase, sale, storage, distribution, or ownership of methamphetamine, heroin, cocaine, and other controlled substances;

d. Cash and other valuables, such as gold and silver, derived from the importation, sale, or distribution of methamphetamine, heroin, cocaine, or other controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;

e. Paraphernalia commonly associated with the importation, packaging, distribution, and sales of methamphetamine, heroin, cocaine, and other controlled substances (such as scales, weighing devices, money counters, packaging materials); and

f. Computers and cellular phones. A secondary warrant will be sought before the search of any computers or cell-phones.